Gary F. Eisenberg, Esq.
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6902
Facsimile: 212.977.1632
GEisenberg@perkinscoie.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GETTY IMAGES (US), INC., <br><br> Plaintiff, <br><br> - against - <br><br> ANDREW BRONSTEIN, and MARK GRETHER, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Getty Images (US), Inc. ("**Getty**"), by and through its undersigned counsel, for its complaint against defendants Andrew Bronstein and Mark Grether (collectively, the "**Defendants**") alleges as follows:

**NATURE OF THE ACTION**

1. Getty brings this action against the Defendants, current and former officers of Sizmek Inc. ("**Sizmek**" or the "**Company**") for the intentional conversion of Getty's property, or alternatively, for the Defendants' negligent action leading to the property's preventable loss.

2. On May 18, 2018, Sizmek subleased certain commercial real property to Getty, with expiration of the lease to occur no earlier than January 28, 2027. In connection with

146089735.2

the sublease, Sizmek required Getty to pay a $713,694.00 security deposit (the "**Security Deposit**"), to be held in trust in a segregated account in accordance with New York General Obligations Law section 7-103.

3. Rather than holding the Security Deposit in trust, Sizmek commingled the money with its own funds, resulting in the conversion of Getty's property. Sizmek rejected the sublease in the course of its Chapter 11 bankruptcy case but claimed to be unable to return the Security Deposit to Getty because Sizmek had commingled and lost the Security Deposit pre-bankruptcy.

4. As Sizmek's officers, the Defendants had an obligation to act as diligent and prudent persons and to not cause Sizmek to convert Getty's property. Pursuant to New York law, the Defendants are personally liable to Getty for the torts that they caused Sizmek to commit.

5. The Defendants' actions resulted in the direct loss of Getty's Security Deposit. As a result, Getty files this instant Complaint for the recovery of the same.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), which provides that the district courts shall have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds $75,000, exclusive of costs and interest.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), which provides that an action may be brought in the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. Upon information and belief, a substantial portion of Getty's claim

arose in this district, including but not limited to, the negotiation and execution of the sublease, the location of the subleased property, and payment of the Security Deposit.

## THE PARTIES

8. Plaintiff Getty Images (US), Inc. is a visual media company incorporated in the State of Delaware and the subtenant under that certain Sublease Agreement dated May 18, 2018 between Sizmek and Getty (the "**Sublease**").

9. Defendant Andrew Bronstein is a natural person who, upon information and belief, is a citizen and resident of New York. Mr. Bronstein served as Chief Financial Officer of Sizmek from at least March 29, 2018 to January 1, 2019. For purposes of diversity under 28 U.S.C. § 1332(a), Mr. Bronstein is a citizen of New York.

10. Defendant Mark Grether is a natural person who, upon information and belief, is a citizen and resident of New York. Mr. Grether served as the President and Chief Executive Officer of Sizmek, as well as a member of Sizmek's board of directors, from January of 2017 to March 29, 2019 (the "**Petition Date**"). For purposes of diversity under 28 U.S.C. § 1332(a), Mr. Grether is a citizen of New York.

## FACTUAL ALLEGATIONS

**The Defendants Approve Sizmek's Execution of the Sublease**

11. On or about May 18, 2018, Sizmek entered into a Sublease Agreement with Getty (the "**Sublease**"), whereby Sizmek subleased 41,982 square feet of office space on the 10th floor of a building located at 195 Broadway, New York, New York to Getty. The Sublease is attached hereto as **Exhibit A**.

12. The Sublease was subject to the terms and conditions of the January 19, 2016 Agreement of Lease between 195 Broadway Property LLC, as landlord and Sizmek

(as successor-in-interest to Rocket Fuel Inc.) as tenant (the "**Prime Lease**").  Like the Prime Lease, the Sublease was governed by New York law and set to expire no earlier than January 28, 2027.

13.     Upon execution of the Sublease, Getty deposited with Sizmek a security deposit in the amount of $713,694.00 (the "**Security Deposit**").  As explicitly provided in paragraph 7.A. of the Sublease, the Security Deposit was at no time deemed an advance rent deposit or advance payment of any other kind.

14.     In accordance with New York law, Sizmek was required at all times to hold the Security Deposit in a trustee capacity and to avoid commingling it with Sizmek's own funds.  However, in flagrant violation of New York law, Sizmek failed in both regards.  Instead, Sizmek commingled the Security Deposit with its own cash.

**The First Lien Financing Agreement**

15.     On or around September 6, 2017, Sizmek Technologies, Inc., a subsidiary of Sizmek, entered into a financing agreement (the "**First Lien Financing Agreement**") with Cerberus Business Finance, LLC and PEPI Capital, L.P. (collectively, the "**First Lien Lenders**").  The First Lien Financing Agreement provided Sizmek and its affiliates with a $135 million term loan and a revolving facility not to exceed $25 million in aggregate principal amount.

16.     In exchange, Sizmek granted the First Lien Lenders rights in certain collateral, including all cash or bank accounts then existing or thereafter opened.  Control agreements were executed for each of these accounts, and Sizmek agreed that no proceeds or collections would be deposited into an account not subject to Cerberus's control.

17. The First Lien Financing Agreement also contained several restrictive provisions affecting Sizmek's cash and account management on a go forward basis. For example, section 8.01(b) of the First Lien Financing Agreement provided that neither Sizmek nor any of its affiliates or subsidiaries were permitted to maintain cash, cash equivalents, or any other amounts in a deposit or securities account without such account being subject to a control agreement with Cerberus. Correspondingly, section 8.01(c) provided that, upon an event of default, all monies in each of these controlled accounts would, at Cerberus's direction, be swept into a Cerberus-held account maintained for the benefit of the First Lien Lenders.

18. The First Lien Financing Agreement remained outstanding and enforceable from the date of its execution through Sizmek's Petition Date.

19. At the time of Sizmek's entry into the Sublease, the Defendants, as officers of the Company, were aware of the First Lien Financing Agreement and knew or should have known of the provisions contained therein. Nonetheless, the Defendants directed, controlled, approved, or ratified Sizmek's sublease to Getty, notwithstanding the fact that the control agreement restrictions of the First Lien Financing Agreement could not coexist with New York law regarding treatment of security deposits. By directing, controlling, approving, or ratifying the Sublease without first carving out from the First Lien Financing Agreement an account whereby the Security Deposit could be held segregated and in trust, the Defendants affirmatively participated in Sizmek's intentional tort.

**Sizmek's Default and Permanent Loss of Getty's Property**

20. On the Petition Date, Sizmek filed a Chapter 11 bankruptcy petition commencing Case No. 19-10971(SMB) (the "**Bankruptcy Case**") in the United Stated Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

21. Effective as of June 1, 2019, Sizmek rejected the Prime Lease and Sublease pursuant to the *Stipulation and Order Pursuant to 11 U.S.C. §§ 105(A), 365(A), 365(D), 502, 553 and F.R.B.P. 9019 Concerning Agreement Between Debtors and 195 Broadway Property LLC* entered by the Bankruptcy Court at docket number 275 in the Bankruptcy Case. As a result of the rejection, Getty requested a return of its Security Deposit.

22. However, Sizmek no longer had Getty's money. Getty was informed by Sizmek's bankruptcy counsel and financial advisors that there was no segregated account and the Security Deposit has been dissipated by Sizmek, and that it may have been commingled into an account that was swept by Cerberus.

23. Ultimately, Sizmek's conversion of the Security Deposit has caused Getty a direct loss of $713,694.00, pre- and post-judgment interest on the same, and costs and attorneys' fees incurred in conjunction with this suit.

## CLAIMS FOR RELIEF

### Count I –Defendants Intentionally Converted the Property of Getty

24. The allegations set forth in the preceding paragraphs of this Complaint are hereby restated and re-alleged as if fully rewritten herein.

25. Under New York law a commercial landlord holds its tenant's security deposit in a trustee capacity. N.Y. Gen. Oblig. Law § 7-103(1); *Glass v. Janback Props., Inc.*, 73 A.D.2d 106, 108–09 (N.Y. App. Div. 1980). The deposit remains at all times the property of the tenant and may not be commingled. *Glass*, *supra*, 73 A.D.2d at 108–09. If comingling occurs, the landlord immediately forfeits all rights to the funds, and the tenant accrues a cause of action for conversion. *Brown v. Atteritano (In re Spinelli)*, 36 B.R. 819, 821–22 (Bankr. E.D.N.Y. 1984). Wrongful intent on the part of the converting party is not required. *See Filner*

*v. Shapiro*, 633 F.2d 139, 141–42 (2d Cir. 1980) (citing *Brown v. Garey*, 196 N.E. 12, 13 (N.Y. 1935)).

26. A director or officer of a corporation may be held personally liable for the conversion by that corporation if the director or officer actually participates in the tortious conduct. *See, e.g.*, *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 49 (N.Y. App. Div. 2012) (collecting cases); *PDK Labs, Inc. v. G.M.G. Trans West Corp.*, 101 A.D.3d 970, 973 (N.Y. App. Div. 2012) (collecting cases). Actual participation is defined as directing, controlling, approving, or ratifying the corporate decision leading to a plaintiff's injury. *Fletcher*, 99 A.D.3d at 49.

27. By causing Sizmek to fail to segregate the Security Deposit but rather to commingle and dissipate the Security Deposit, thereby converting Getty's property, Defendants are personally liable to Getty for the conversion.

28. Furthermore, as set forth above, at the time Sizmek entered into the Sublease, it was obligated under the First Lien Financing Agreement to grant Cerberus control over all bank accounts or cash equivalents then existing or thereafter acquired. Simultaneously, Sizmek was obligated under New York law to hold any security deposit paid under the Sublease in trust in a segregated bank account for the benefit of Getty. *See* N.Y. Gen. Obe. Law § 7-103.

29. By directing, controlling, approving, or ratifying the Sublease without first carving out from Cerberus's control a segregated account for the security deposit, the Defendants took affirmative, participatory action that directly led to Sizmek's conversion of Getty's property. Accordingly, the Defendants are personally liable to Getty for its damages incurred.

**Count II – In the Alternative, Defendants Negligent Actions Caused Getty's Loss**

30. The allegations set forth in the preceding paragraphs of this Complaint are hereby restated and re-alleged as if fully rewritten herein.

31. In the alternative, the Defendants are liable to Getty because their negligent approval of the Sublease caused Getty's loss.

32. Negligence is equally as valid a basis for personal liability as active participation. *Van Schaick v. Aron*, 10 N.Y.S.2d 550, 562 (N.Y. Sup. Ct. 1938). A director or officer is liable for negligence when he or she either participates in the corporation's wrongful act or permits such act to take place with actual or imputable knowledge of its occurrence. Imputable knowledge arises when a director or officer fails to exercise ordinary prudence in ascertaining the facts that a diligent director or officer would know. *Id.* at 563. Negligent directors and officers will be liable for any preventable losses incurred by the injured party.

33. Here, Defendants had a duty to segregate the Security Deposit and breached that duty, causing injury to Getty.

34. Furthermore, Defendants failed to ascertain existing covenants or requirements of law when entering into the Sublease with Getty. This failure to act as a diligent director or officer creates imputable knowledge of the corporation's subsequent conversion, which the Defendants permitted to occur. Accordingly, the Defendants are personally liable for Getty's loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor as follows:

A. an award of monetary damages against the Defendants for direct and consequential damages relating to Getty's loss of the Security Deposit, jointly and severally, in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

B. an award of monetary damages against the Defendants for costs and expenses incurred in prosecuting this action;

C. all other equitable and monetary relief against the Defendants that is permitted by law and determined by the Court.

Dated: October 23, 2019  Respectfully submitted,
New York, New York

By: */s/ Gary F. Eisenberg*
Gary F. Eisenberg, Esq.
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6902
Facsimile: 212.977.1632
GEisenberg@perkinscoie.com

*Attorneys for Plaintiff*