UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | | |
|---|---|---|
| GETTY IMAGES (US), INC., | : | 19-cv-9804 (GBD) |
| Plaintiff, | : | |
| -against- | : | AMENDED ANSWER AND THIRD PARTY COMPLAINT |
| ANDREW BRONSTEIN and MARK GRETHER, | : | |
| | | JURY TRIAL DEMANDED |
| Defendants. | : | |

---------------------------------------------------------------x

| | |
|---|---|
| ANDREW BRONSTEIN, | : |
| Third-Party Plaintiff, | : |
| | : |
| -against- | |
| | : |
| CERBERUS BUSINESS FINANCE, LLC, CULHANE MEADOWS HAUGHIAN & WALSH, PLLC, ANDREW M. HEPBURN, JR., and TIM QUILLIN, | : |
| | : |
| Third-Party Defendants | : |

---------------------------------------------------------------x

Defendant Andrew Bronstein ("Bronstein"), through his counsel, Sher Tremonte LLP, hereby answers the Complaint filed by plaintiff Getty Images (US), Inc. ("Getty") as follows:

GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b), except as specifically identified below, Bronstein generally denies each and every allegation in the Complaint, including any and all allegations that he has engaged in any wrongful conduct, and he denies that he has any liability in this matter. At all times during his association with Sizmek Inc. ("Sizmek"), Bronstein acted with honesty, integrity and in good faith, and he specifically denies any allegation to the contrary.

Bronstein had no knowledge of and did not knowingly participate in any misappropriation of any funds belonging to Getty.

Where the allegations in the Complaint are not directed at Bronstein, no response is required and no response has been provided below. Any lack of response should not be construed as an admission by Bronstein that the facts alleged or the characterizations asserted in those paragraphs are accurate.

## SPECIFIC RESPONSES TO INDIVIDUAL ALLEGATIONS

1. Denies the allegations contained in paragraph 1.

2. In response to paragraph 2, admits that Sizmek entered into a sublease concerning certain real property with Getty, refers to that document for its express terms and denies that any response is required to the legal argument concerning New York General Obligations Law.

3. Denies the allegations contained in paragraph 3 except admits that it is Bronstein's understanding that Sizmek exercised certain rights under the U.S. Bankruptcy Code to reject the sublease that had been entered into between Sizmek and Getty.

4. Denies the allegations contained in paragraph 4.

5. Denies the allegations contained in paragraph 5 except admits that Getty seeks relief in this action concerning certain funds that Getty transferred to Sizmek as a security deposit under the express terms of the sublease.

6. The allegations in Paragraph 6 are legal assertions as to which no response is required.

7. The allegations in the first sentence of paragraph 7 are legal assertions as to which no response is required. With respect to the remaining allegations in paragraph 7, Bronstein admits that certain negotiations concerning the sub-lease occurred in New York, New York, the

subleased real property is located in New York, New York, and he executed the sublease on behalf of Sizmek while working at a Sizmek office located in New York, New York.

8. Denies knowledge or information sufficient to for a belief concerning the allegations contain in paragraph 8 except admits that Sizmek and Getty entered into a sublease dated May 18, 2018.

9. Denies the allegations contained in paragraph 9 except admits that for a certain period of time during 2018, Bronstein served as the Chief Financial Officer of Sizmek.

10. Denies knowledge or information sufficient to form a belief concerning the allegations in paragraph 10.

11. Denies the allegations contained in paragraph 11 except admits that the sublease is attached as Exhibit A to the complaint and refers to that document for its express terms.

12. Denies the allegations contained in paragraph 12 except admits that a prime lease existed for the same real property that was the subject of the sublease and refers to the prime lease for its express terms.

13. Denies the allegations contained in paragraph 13 except admits that the sublease included provisions concerning a security deposit received by Sizmek from Getty and refers to the sublease for all terms concerning that security deposit.

14. The allegations in Paragraph 14 are legal assertions as to which no response is required.

15. Denies the allegations contained in paragraph 15 except admits that in September 2017, a First Lien Financing Agreement was entered into among various parties, including Sizmek Technologies, Inc., a Sizmek subsidiary, and refers to that document for the express terms of that agreement, including the amount of financing described in the agreement.

16. Denies the allegations contained in paragraph 16 except to the extent those allegations fully and accurately describe the terms of the First Lien Financing Agreement and related documents.

17. Denies the allegations contained in paragraph 17 except to the extent those allegations fully and accurately describe the terms of the First Lien Financing Agreement and related documents.

18. Denies knowledge or information sufficient to form a belief concerning the allegations contained in paragraph 18.

19. Denies the allegations contained in paragraph 19 except admits that Bronstein was aware of the existence of the First Lien Financing Agreement at the time Sizmek and Getty entered into the sublease.

20. Admits the allegations contained in paragraph 20.

21. Denies knowledge or information sufficient to form a belief concerning the allegations contained in paragraph 21 except admits that the public docket in the Sizmek bankruptcy proceeding includes the document identified in paragraph 21 as Docket No. 275.

22. Denies knowledge or information sufficient to form a belief concerning the allegations contained in paragraph 22.

23. Denies the allegations contained in paragraph 23.

24. In response to paragraph 24, the responses to paragraphs 1 through 23 are restated and realleged.

25. The allegations in Paragraph 25 are legal assertions as to which no response is required.

26. The allegations in Paragraph 26 are legal assertions as to which no response is required.

27. Denies the allegations contained in paragraph 27.

28. The allegations in Paragraph 28 are legal assertions as to which no response is required.

29. Denies the allegations contained in paragraph 29.

30. In response to paragraph 24, the responses to paragraphs 1 through 29 are restated and realleged.

31. Denies the allegations contained in paragraph 31.

32. The allegations in Paragraph 32 are legal assertions as to which no response is required.

33. Denies the allegations contained in paragraph 33.

34. Denies the allegations contained in paragraph 34.

## RELIEF SOUGHT

Getty's Prayer For Relief does not contain allegations that require a response. Bronstein nevertheless denies that the relief sought by Getty is appropriate or available.

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The complaint should be dismissed for failure to include required parties, pursuant to Rule 19 of the Federal Rules of Civil Procedure, including Sizmek and the First Lien Lenders.

## THIRD AFFIRMATIVE DEFENSE

The complaint is barred by the doctrines of waiver, ratification and estoppel. In substance, Getty consented to actions taken by the First Lien Lenders that caused Sizmek to be unable to return the security deposit.

## THIRD-PARTY COMPLAINT

1. Bronstein incorporates by reference each of the responses to the Complaint set forth above.

Parties

2. During the period from March through June 2018, Bronstein served as Chief Financial Officer of Sizmek. As CFO, Bronstein supervised certain finance professionals employed by Sizmek.

3. Third-party defendant Cerberus Business Finance, LLC ("Cerberus") provided financing to Sizmek pursuant to a First Lien Financing Agreement and served as Agent for the lenders under the First Lien Financing Agreement. Cerberus is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York, New York.

4. Third-party defendant Culhane Meadows Haughian & Walsh, PLLC ("Culhane") served as outside legal counsel to Sizmek in connection with the sub-lease entered into between Sizmek and Getty. Culhane is a professional limited liability corporation with offices in Atlanta, Georgia and other cities in the United States.

5. Third-party defendant Andrew M. Hepburn, Jr. ("Hepburn") was employed by Sizmek as General Counsel during the period from March through June 2018. Hepburn is a

member of the State Bar of Georgia and, upon information and belief, lived in the Atlanta metropolitan area during the period from March through June 2018 while working for Sizmek.

6. Third-party defendant Tim Quillin ("Quillin") was employed by Sizmek as AVP, Corporate Real Estate & Facilities during the period from March through June 2018. Upon information and belief, Quillin currently works for Sizmek by Amazon in Fort Myers, Florida.

Facts

7. During the period from March through May 2018, Sizmek negotiated a sub-lease of office space located at 195 Broadway, New York, New York with plaintiff Getty Images. Quillin and Hepburn had primary responsibility for the negotiation and execution of the sub-lease with Getty Images on behalf of Sizmek. Upon information and belief, Hepburn retained Culhane to serve as outside legal counsel to Sizmek in connection with the negotiation and execution of the sub-lease. At the time Sizmek and Getty Images entered into the sub-lease for office space at 195 Broadway, none of Quillin, Hepburn or Culhane advised Bronstein that the security deposit received from Getty Images should be segregated by Sizmek in a separate bank account. Instead, Quillin, Hepburn and Bronstein expressly discussed how the funds received from Getty Images could be used to fund a portion of the real estate brokerage commission that Sizmek had agreed to pay in connection with the sub-lease.

8. During March to June 2018, Alvarez & Marsal ("A&M"), a management consulting firm, provided professional services to Cerberus regarding Sizmek's financial condition and business plans. A&M had access to Sizmek's financial books and records and provided regular oral and written reports to Cerberus concerning Sizmek's business activities. In particular, A&M analyzed the cash received by Sizmek every week and maintained a rolling rolling 13 week cash forecast during this time period.  Moreover, these reports contained

information concerning sub-leases entered into by Sizmek, including the sub-lease of office space at 195 Broadway to Getty Images. The reports created by A&M and delivered to Cerberus included Sizmek's liability to sub-tenants arising from security deposits received by Sizmek.

9. Under the First Lien Agreement, Sizmek's management of cash was subject to certain restrictions and Cerberus was given rights to take control over Sizmek's cash under certain defined circumstances. On March 25, 2019, Cerberus purported to exercise rights under the First Lien Agreement, including restricting Sizmek's access to its cash management accounts and sweeping substantially all of Sizmek's cash funds to accounts controlled by Cerberus. Upon information and belief, at the time that Cerberus took these actions in March 2019, Cerberus either knew or should have known that: (a) Sizmek remained potentially liable to Getty Images for the return of the Security Deposit; and (b) Sizmek had not segregated the Security Deposit in a separate bank account.

10. Largely in response to the actions taken by Cerberus, on March 29, 2019, Sizmek filed a voluntary Chapter 11 bankruptcy petition. Shortly thereafter, Sizmek reached an agreement with Cerberus for Sizmek's consensual use of cash collateral to stabilize operations, fund payroll for employees and otherwise allow Sizmek to maximize the value of its assets during the Chapter 11 proceeding. In its first motion for an order allowing Sizmek to operate its cash management system, Sizmek confirmed that it had approximately $3.9 million in cash as of March 29, 2019.

11. On May 16, 2019, Sizmek's Landlord at 195 Broadway drew down completely a $2.3 million letter of credit that secured Sizmek's obligations under the prime lease that was incorporated by reference in the Getty Images' sub-lease. On May 22, 2019, Sizmek provided

8

notice to the Landlord that it was rejecting the prime lease, subject to Bankruptcy Court approval.

12. On May 31, 2019, Getty Images filed an objection to Sizmek's rejection of the prime lease at 195 Broadway. In that objection, Getty Images stated that the prime lease could not be rejected by Sizmek unless the sub-lease was also rejected. In addition, Getty Images contended that its legal counsel was told by counsel for Sizmek that Sizmek had "failed to hold Getty's security deposit of $713,694.00 in trust and Getty should not expect to receive it back after rejection of the Sublease."

13. On June 21, 2019, the Bankruptcy Court "so ordered" a stipulation entered into by Sizmek, the 195 Broadway Landlord, and Getty Images. In that stipulation: (a) Sizmek waived any objections to the Landlord's seizure of the $2.3 million letter of credit while the Landlord allowed Sizmek to reject the prime lease; and (b) Sizmek rejected the sub-lease with Getty Images while allowing Getty Images to file a proof of claim in the Bankruptcy proceeding concerning Sizmek's rejection of the sub-lease. Upon information and belief, Getty Images has not sought to recover the Security Deposit by filing an adversary proceeding against both Sizmek and Cerberus in the Bankruptcy proceeding.

Count One: Common Law Indemnity

14. Bronstein repeats and realleges each and every one of the allegations in the preceding paragraphs as if fully set forth herein.

15. The Complaint filed by Getty Images alleges that Bronstein is personally liable for Sizmek's conversion of the Security Deposit and that Bronstein acted negligently when he approved and executed the sub-lease.

16.     As described above, Hepburn and Quillin exercised primary responsibility for the negotiation and execution of the sub-lease. Bronstein relied on the information and advice received from Hepburn and Quillin at the time Bronstein executed the sub-lease. If Hepburn and/or Quillin had informed Bronstein that the security deposit was required to be segregated by Sizmek after its receipt from Getty Images, Bronstein would have directed finance professionals under his supervision to create a segregated account for the deposit.

17.     Upon information and belief, Culhane provided legal advice to Sizmek concerning the sub-lease. Upon information and belief, Culhane failed to advise Hepburn and/or Quillin that Sizmek was required to segregate the security deposit after those funds were received from Getty Images.

18.     Upon information and belief, Cerberus either knew or should have known in June 2018 – 9 months before it sought to exercise rights under the First Lien Agreement – that Sizmek had not segregated the security deposit that had been received from Getty Images in connection with the 195 Broadway sub-lease. As a result, when Cerberus exercised its right to sweep certain funds from Sizmek's bank accounts in March 2019, Cerberus either knew or should have known that those funds included the security deposit funds received from Getty Images by Sizmek.

19.     Based on the foregoing, Hepburn, Quillin, Culhane and Cerberus must indemnify Bronstein in the event any recovery is awarded to Getty Images and for all costs and expenses incurred by Bronstein in this action.

Count Two (in the alternative): Contribution

20.     Bronstein repeats and realleges each and every one of the allegations in the preceding paragraphs as if fully set forth herein.

21. Bronstein denies that he acted negligently in connection with his approval and execution of the sub-lease.

22. If Getty Images sustained any damages in connection with the sub-lease and Sizmek's handling of the security deposit, then such damages and injuries were caused by Hepburn, Quillin, Culhane and Cerberus.

23. Based on the foregoing, if any verdict or judgment is rendered in favor of Getty Images awarding Getty Images damages, then Bronstein shall be entitled to contribution from Hepburn, Quillin, Culhane and Cerberus and an apportionment of fault and responsibility for all or part of any such verdict or judgment which shall be attributable to the acts or omissions of Hepburn, Quillin, Culhane and Cerberus.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Andrew Bronstein respectfully requests that the Court:

1. Enter judgment in his favor;

2. On Count One of the Third-Party Complaint, award full and complete indemnification by Hepburn, Quillin, Culhane and Cerberus for any judgment or verdict rendered against Bronstein in favor of Getty Images;

3. On Count Two of the Third-Party Complaint, in the alternative, a judgment in favor of Bronstein and over and against Hepburn, Quillin, Culhane and Cerberus for all or that portion of any verdict or judgment which may be obtained by Getty Images to the extent that the responsibility of Hepburn, Quillin, Culhane and Cerberus contributed thereto;

4. Award him attorneys' fees and other costs; and

5. Award him such other relief as this Court may deem just and proper.

Dated: New York, New York
October 19, 2020

SHER TREMONTE LLP


By:   */s/ Heather Y. Han*
      Robert Knuts
      Heather Y. Han

90 Broad Street
New York, NY 10004
(212) 202-2638
rknuts@shertremonte.com

*Attorneys for Defendant and Third Party Plaintiff Andrew Bronstein*