UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GETTY IMAGES (US), INC.,

        Plaintiff,

        - against -

ANDREW BRONSTEIN, AND MARK GRETHER

        Defendants.
-------------------------------------------------------X
ANDREW BRONSTEIN

        Third-Party Plaintiff,

        - against -

CERBERUS BUSINESS FINANCE, LLC, CULHANE MEADOWS HAUGHIAN & WALSH, PLLC, ANDREW M. HEPBURN, JR., AND TIM QUILLIN,

        Third-Party Defendants
-------------------------------------------------------X

**Oral Argument Requested**

Case No. 1:19-cv-09804 (GBD)

## MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT CERBERUS BUSINESS FINANCE, LLC'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

SCHULTE ROTH & ZABEL LLP

Andrew D. Gladstein
William H. Gussman, Jr.
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Third-Party Defendant Cerberus Business Finance, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY .........................................2

ARGUMENT....................................................................................................................................4

    I.    BRONSTEIN FAILS TO ALLEGE A DUTY OWED BY CERBERUS ...............5

    II.    CONTRIBUTION IS UNAVAILABLE WHERE THE DAMAGES SOUGHT ARE PURELY ECONOMIC IN NATURE ...........................................7

    III.    THE INDEMNIFICATION CLAIM MUST BE DISMISSED BECAUSE BRONSTEIN IS AN ALLEGED WRONGDOER .................................................8

CONCLUSION..................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...............................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................4

*ATSI Commc'ns v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................4

*Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*,
   71 N.Y.2d 21 (1987) ..........................................................................................................7

*Child.'s Corner Learning Ctr. v. A. Miranda Contracting Corp.*,
   64 A.D.3d 318 (1st Dep't 2009) .....................................................................................7, 8

*Dora Homes, Inc. v. Epperson*,
   344 F. Supp. 2d 875 (E.D.N.Y. 2004) ...............................................................................5

*Fashion Shop LLC v. Virtual Sales Grp. Corp.*,
   525 F. Supp. 2d 436 (S.D.N.Y. 2007) ............................................................................ 4-5

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*,
   No. 06 Civ. 181(GBD),
   2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007) ............................................................ 5, 6-7

*Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*,
   769 F. Supp. 2d 322 (S.D.N.Y. 2011) ................................................................................5

*Rockefeller Univ. v. Tishman Constr. Corp. of N.Y.*,
   232 A.D.2d 155 (1st Dep't 1996) .......................................................................................9

*Rogers v. Westfalia Associated Techs., Inc.*,
   485 F. Supp. 2d 121 (N.D.N.Y. 2007) ...............................................................................7

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
   468 F. Supp. 2d 508 (S.D.N.Y. 2006) ................................................................................6

*Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*,
   307 A.D.2d 891 (1st Dep't 2003) .......................................................................................8

*Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*,
    109 A.D.2d 449 (1st Dep't 1985) .................................................................................... 8-9

*Westport Marina, Inc. v. Boulay*,
    783 F. Supp. 2d 344 (E.D.N.Y. 2010) ................................................................................ 5

**Statute & Rules**

N.Y. C.P.L.R. § 1401 .................................................................................................................. 4, 7

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1, 4

Third-Party Defendant Cerberus Business Finance, LLC ("Cerberus"), by and through its attorneys, Schulte Roth & Zabel, LLP, submits this Memorandum of Law in support of its Motion to Dismiss the Third-Party Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Third-Party Complaint constitutes a stunning effort to hold a company's secured lender liable for a security deposit that the company failed to repay to a third-party. What is more, the party seeking to hold the secured lender liable is not the party who is allegedly owed the security deposit; rather, the Third-Party Plaintiff is the former Chief Financial Officer who apparently failed to segregate the security deposit in the first place and is being sued in this action by the party who is owed the security deposit. The claims here against the secured lender—Cerberus—are baseless.

The salient facts are straightforward. Cerberus was a secured, first-lien lender to Sizmek, Inc. ("Sizmek"). Sizmek subleased commercial space to Getty Images (US), Inc. ("Getty") and received a security deposit from Getty. Sizmek's Chief Financial Officer, Andrew Bronstein, apparently failed to maintain that security deposit in a segregated account, in breach of Sizmek's obligation to Getty. After Sizmek filed for bankruptcy and failed to return Getty's security deposit, Getty sued two of Sizmek's former officers, including Bronstein.

Bronstein seeks to hold *Cerberus*, which was not a party to the sublease and which plainly owed no duties on account of the sublease, liable for Sizmek's own failure to repay Getty's security deposit. At its core, Bronstein's claims—for common law contribution and indemnification—appear to be premised on the theory that if Cerberus had done his job for him, by recognizing in the course of its own diligence of Sizmek that Bronstein had comingled Getty's

1

security deposit with other Sizmek assets, Bronstein would not be liable to Getty.  That is nonsense.

The legal infirmities of the Third Party Complaint against Cerberus are numerous.  *First*, both the contribution and indemnification claims fail because Cerberus, as a secured lender to Sizmek, owed no duty, either to Getty or to Bronstein, arising out of a sublease that it had no connection to.  *Second,* under well settled New York law, a contribution claim is unavailable where, as here, the damages sought—the repayment of the amount of the lost security deposit—are purely economic in nature.  And *third,* as an alleged wrongdoer, New York law makes clear that Bronstein cannot seek indemnification at all.

## BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY

Third-Party Plaintiff Andrew Bronstein is a defendant in the primary action brought by Getty.  Getty subleased commercial property from Bronstein's company, Sizmek.  Getty alleges that Bronstein converted Getty's security deposit by comingling it with other Sizmek accounts, which were later subject to Sizmek's bankruptcy proceedings.

The claims against Cerberus in the Third-Party Complaint[1] center on Cerberus' status as agent to a financing agreement with Sizmek.  Specifically, pursuant to the First Lien Financing Agreement, Cerberus facilitated a term loan and revolving loan facility from certain lenders to Sizmek.  (TPC  ¶ 3.)  In exchange, Cerberus received rights to Sizmek's collateral, including its cash and bank accounts.  (*Id.* ¶ 9.)  In the event of default under the terms of the First Lien Financing Agreement, Cerberus held the right to sweep the assets in the subject accounts.  (*Id.*)

On March 25, 2019, following a breach by Sizmek of the First Lien Financing Agreement, Cerberus exercised its rights under that agreement, "sweeping substantially all of

---

[1] References herein to the Third-Party Complaint sometimes have the abbreviation ("TPC").

Sizmek's cash funds to accounts controlled by Cerberus."  (TPC ¶ 9.)  Sizmek filed a Chapter 11 bankruptcy petition on March 29, 2019, following which Sizmek reached an agreement with Cerberus to "stabilize operations" during the Chapter 11 proceeding, allowing Sizmek's "consensual use of cash collateral."  (TPC ¶ 10.)  Thereafter, "Sizmek's Landlord at 195 Broadway drew down completely a $2.3 million letter of credit," and Getty was "told by counsel for Sizmek that Sizmek had 'failed to hold Getty's security deposit of $713,694.00 in trust and Getty should not expect to receive it back…."  (TPC ¶ 11.)  Getty seeks $713,694.00 in damages against Bronstein and Mark Grether, Sizmek's former Chief Executive Office—the amount of the security deposit, plus costs.  (TPC ¶ 12.)

Bronstein alleges that during March to June 2018, Cerberus received "regular oral and written reports" from Alvarez & Marsal, a management consulting firm, regarding Sizmek's business activities, and that these reports included references to Getty's sublease.  (TPC ¶ 8.)  Bronstein claims as a result that Cerberus "either knew or should have known in June 2018…that Sizmek had not segregated the security deposit that had been received from Getty Images in connection with the 195 Broadway sub-lease," and that "Cerberus either knew or should have known that those funds included the security deposit funds received from Getty Images by Sizmek."  (TPC ¶ 9.)

Notably, Sizmek agreed in the First Lien Financing Agreement that Cerberus had no duty to inspect the collateral that was used to secure the loan, and that Cerberus would not be liable for any action arising out of such purported duties.

> The Agents [(defined to include Cerberus)] and their directors, officers, agents or employees shall not be liable for any action taken or omitted to be taken by them under or in connection with this Agreement….  Without limiting the generality of the foregoing, the

3

>       Agents…(iv) shall not have any duty to…inspect the Collateral[2] or
>       other property (including, without limitation, the books and records)
>       of any Person.

(Ex. 1 at Sec. 10.03 (p.123-24).)

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In deciding whether a plaintiff has reached the facial plausibility threshold, a court must accept all well-pled factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). Here, the Third-Party Complaint falls well short of stating a plausible claim for common law indemnification or contribution.

In order to state a claim for indemnification or contribution, a plaintiff must allege sufficient facts to infer the existence and breach of a duty owed. Specifically, CPLR § 1401 permits contribution claims between "two or more persons who are *subject to liability* for damages for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401 (emphasis added); *see also, Fashion Shop LLC v. Virtual Sales Gr. Corp.,* 525 F. Supp. 2d 436, 446 (S.D.N.Y. 2007) ("The critical requirement for a contribution claim under New York law is that the breach of duty by the contributing party must have had a part in causing or

---

[2] "Collateral" is defined broadly in the First Lien Agreement to include "all of the property and assets" serving as security for the loan.

augmenting the injury for which contribution is sought."), *aff'd,* 323 F. App'x 96 (2d Cir. 2009). Similarly, a cause of action for common-law indemnification can be sustained only if: "(1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." *Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture,* No. 06 Civ. 181(GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007), *aff'd,* 311 F. App'x 455 (2d Cir. 2009).

## I.  BRONSTEIN FAILS TO ALLEGE A DUTY OWED BY CERBERUS

As noted above, a necessary element of both common law contribution and indemnification claims in New York State is the existence of a duty owed. *See Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2011) (contribution liability "may flow from either of two sources: breach of a duty to the plaintiff [the injured party] *or* to the party seeking contribution," "[b]ut in both cases, a breach of that duty will be required") (citing *Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 357 (E.D.N.Y. 2010)); *id.* at 329-330 (analyzing indemnification claim and noting a third party action for indemnity "does not lie against one who has not violated a duty owed to plaintiff in the primary action.") (citing *Dora Homes, Inc. v. Epperson,* 344 F. Supp. 2d 875, 894 (E.D.N.Y. 2004)).

Here, the Third Party Complaint does not allege that Cerberus was in privity with Getty (it was not) or otherwise owed any duties to Getty (it did not). Accordingly, the Third-Party Complaint does not even attempt to allege a duty between Cerberus and Getty. Rather, to the extent any duty is even alluded to in the Third Party Complaint, Bronstein seems to suggest that it was owed to him (*i.e.,* it was the responsibility of Bronstein's lawyers, his co-workers, and even unrelated commercial lenders (Cerberus), to make sure that Bronstein performed his own duties correctly). Plainly, that is not the case.

5

Bronstein has alleged no facts to plausibly suggest that Cerberus, a commercial lender with no other connection to the sublease between Getty and Sizmek, owed a duty of care to Bronstein arising out of the sublease. The only agreement to which Cerberus *was* a party—the First Lien Financing Agreement—was not only entirely unrelated to the sublease, it explicitly disclaimed any duty on the part of Cerberus to do exactly what Bronstein alleges to be the basis of Cerberus' liability. Cerberus had no duty to inspect the collateral used to secure the loan to Sizmek under the First Lien Financing Agreement. (Ex. 1 at Sec. 10.03 (p.123-24).) "[A]bsent a special relationship between the parties, no duty is owed to the public at large or to those outside the class of people entitled to expect the actor's due care to them." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 533 (S.D.N.Y. 2006), *aff'd sub. nom, Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.,* 737 F.3d 166 (2d Cir. 2013)).

Moreover, even without the exculpatory language of the First Lien Financing Agreement, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *See Abraham v. Am. Home Mortg. Servicing, Inc.,* 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) ("To the extent [Plaintiff] alleges Defendants breached some duty other than those contained in any contract she had with them, such a claim would also fail. It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.")

Finally, this Court has previously dismissed indemnification and contribution claims where a plaintiff failed to adequately allege the existence of a duty owed. *See Highland Holdings,* 2007 WL 2405689, at *4 ("In this case, Highland fails to allege that Debtor owed it any independent duty separate and apart from Debtor's contractual obligations under the

6

[applicable] Agreement. Therefore, Highland has not sufficiently alleged a claim for common-law indemnification.") (citing *Rogers v. Westfalia Associated Techs., Inc.,* 485 F. Supp. 2d 121, 130 n. 18 (N.D.N.Y. 2007) (dismissing claims for common-law indemnification and contribution because "none of the parties c[ould] show a legal duty, independent of a contract, owed by [the alleged indemnitor]")).

Because Bronstein cannot allege that Cerberus owed a duty of care arising out of the sublease or security deposit, his claims for indemnification and contribution must be dismissed.

## II. CONTRIBUTION IS UNAVAILABLE WHERE THE DAMAGES SOUGHT ARE PURELY ECONOMIC IN NATURE

Even if Bronstein had alleged a cognizable duty, it would still not save his contribution claim. CPLR 1401 requires that a plaintiff allege "injury to property or wrongful death" in order to claim contribution. It is now axiomatic that "purely economic loss resulting from a breach of contract does not constitute 'injury to property.'" *Child.'s Corner Learning Ctr. v. A. Miranda Contracting Corp.*, 64 A.D.3d 318, 323 (1st Dep't 2009) (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 26 (1987). That is because, as the Court of Appeals has stated, allowing the apportionment of liability where the alleged loss is purely economic "would not only be at odds with the statute's legislative history, but also do violence to settled principles of contract law which limit a contracting party's liability to those damages that are reasonably foreseeable at the time the contract is formed." *Bd. of Educ. of Hudson*, 71 N.Y.2d at 28. As a result, where "the underlying claim seeks purely economic damages, a claim for common-law contribution is not available." *Child.'s Corner Learning Ctr.*, 64 A.D.3d at 323.

Here, there is no question that the damages sought by Getty—the value of the security deposit allegedly lost—are purely economic in nature. Indeed, had Sizmek survived bankruptcy,

7

Getty would have sought the return of the security deposit pursuant to the terms of the sublease between Getty and Sizmek. But the bankruptcy prevented that outcome, and so Getty has strategically asserted tort claims against Sizmek's officers directly, instead. That strategic choice has no impact on the contribution analysis, however. "[T]he touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Child.'s Corner Learning Ctr.*, 64 A.D.3d at 324 (collecting cases). Bronstein "may not seek contribution from [Cerberus] where the alleged 'tort' is essentially a breach of contract claim." *Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*, 307 A.D.2d 891, 897 (1st Dep't 2003). That is precisely the case here.

### III. THE INDEMNIFICATION CLAIM MUST BE DISMISSED BECAUSE BRONSTEIN IS AN ALLEGED WRONGDOER

Bronstein's claim for common law indemnification against Cerberus fails for the additional reason that New York law does not permit a defendant like Bronstein, who is directly implicated in the alleged wrongdoing, to assert a cause of action for indemnification. "Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer." *Trump Vill. Section 3*, 307 A.D.2d at 895 (quoting *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 451 (1st Dep't 1985). As a result, New York courts have consistently held that a party who has participated to some degree in the wrongdoing cannot receive the benefit of the doctrine of common law or implied indemnity. See *Trump Vill. Section 3*, 307 A.D.2d at 895 ("[s]ince the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot

8

receive the benefit of this doctrine.") (quoting *Trs. of Columbia Univ.*, 109 A.D.2d at 453); *see also, Rockefeller Univ. v. Tishman Constr. Corp. of N.Y*, 232 A.D.2d 155 (1st Dep't 1996).

Here, the Third-Party Complaint provides absolutely no basis for indemnification, particularly in the face of Bronstein's admitted involvement in the alleged wrongdoing. *See* TPC ¶ 16 (conceding that Bronstein failed to direct finance professionals under his supervision to create a segregated account for the security deposit, and blaming others for not advising him to do so). Accordingly, since "liability against [Bronstein] would be based upon [his] own participation in the acts giving rise to the loss, that is, as an actual wrongdoer,… [Bronstein is] precluded from recovery…on the basis of common-law indemnity." *Trs. of Columbia Univ.*, 109 A.D.2d at 453-454.

## CONCLUSION

The claims asserted in the Third-Party Complaint against Cerberus should be dismissed with prejudice.

DATED: New York, New York
December 11, 2020

SCHULTE ROTH & ZABEL LLP

By: /s/ Andrew D. Gladstein
Andrew D. Gladstein
William H. Gussman, Jr.

919 Third Avenue
New York, New York 10022
(212) 849-7000
(212) 849-7100

*Attorneys for Third-Party Defendant Cerberus Business Finance, LLC*