UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GETTY IMAGES (US) INC.,

                Plaintiff,

  -against-

ANDREW BRONSTEIN and MARK GRETHER,

                Defendants.

---

ANDREW BRONSTEIN,

                Third-Party Plaintiff,

  -against-

CERBERUS BUSINESS FINANCE, LLC,
CULHANE MEADOWS HAUGHIAN & WALSH,
PLLC, ANDREW M. HEPBURN, JR., and
TIM QUILLIN,

                Third-Party Defendants.

Case No. 19-cv-9804 (GBD)

---

**THIRD-PARTY PLAINTIFF ANDREW BRONSTEIN'S MEMORANDUM OF LAW
IN OPPOSITION TO CERBERUS BUSINESS FINANCE, LLC'S
<u>MOTION TO DISMISS THIRD-PARTY COMPLAINT</u>**

 

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

*Attorneys for Defendant and Third-Party
Plaintiff Andrew Bronstein*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................. 1

ARGUMENT ....................................................................................................................................... 4

I.  LEGAL STANDARD ................................................................................................................ 4

II. BRONSTEIN HAS STATED A CLAIM FOR COMMON-LAW INDEMNITY ............ 4

    A. Bronstein Has Pled the Existence of Duties Owed by Cerberus .................................. 6

    B. Bronstein's Defendant Status Does Not Preclude Him from Seeking Indemnification 9

       i. Bronstein Is Entitled to Claim Indemnification as A Matter of Law ........................ 9

       ii. Bronstein Is Entitled to Claim Indemnification as A Matter of Fact ..................... 11

III. BRONSTEIN HAS STATED A CLAIM FOR CONTRIBUTION ................................. 12

CONCLUSION .................................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Allianz Ins. Co. v. Otero*,
    353 F. Supp. 2d 415 (S.D.N.Y. 2004) ................................................................................... 5

*Amusement Industry, Inc. v. Stern*,
    693 F.Supp.2d 319 (S.D.N.Y.2010) ..................................................................................... 11

*Anderson v. Greyhound Lines, Inc.*,
    No. 06 CIV. 13371 GBD, 2011 WL 3480945 (S.D.N.Y. Aug. 3, 2011) ............................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 4

*Board of Educ. of Hudson City School Dist. v. Sargent*,
    71 N.Y.2d 21 (N.Y. Ct. App. 1987) .................................................................................... 13

*Calcutti v. SBU, Inc.*,
    273 F.Supp.2d 488 (S.D.N.Y. 1993) .................................................................................... 14

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................................................................. 11

*Children's Corner Learning Ctr. v. A. Miranda Contr. Corp.*,
    64 A.D.3d 318 (1st Dep't 2009) .......................................................................................... 13

*City of New York v. Black & Veatch*,
    No. 95 CIV. 1299 (LAP), 1997 WL 624985 (S.D.N.Y. Oct. 6, 1997) ........................... 10, 11

*Facilities Dev. Corp. v. Miletta*,
    180 A.D.2d 97, 584 N.Y.S.2d 491 (3rd Dep't 1992) ............................................................ 5

*Farmer v. Fzoad.com Enterprises Inc.*,
    No. 17CIV9300GBDOTW, 2020 WL 5569581 (S.D.N.Y. Sept. 17, 2020) ......................... 4

*First Indem. of Am. Ins. Co. v. Shinas*,
    No. 03 CIV.6634 KMW KNF, 2009 WL 3154282 (S.D.N.Y. Sept. 30, 2009) .................... 5

*Garrett v. Holiday Inns, Inc.*,
    86 A.D.2d 469, 450 N.Y.S.2d 619 (4th Dep't 1982) ................................................... 5, 8, 10

*Gen. Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON Reinsurance Agency, Inc.*,
    860 F. Supp. 983 (S.D.N.Y. 1994) ................................................................................. 5, 6, 7

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985) .............................................................................................. 4

*Gramercy Park LLC v. Michael Haverland Architect*,
    68 Misc.3d 1201(a) (Sup. Ct. N.Y. County 2020) ............................................................ 14

*Hanley v. Fox*,
    97 A.D.2d 606 (3d Dept. 1983) ........................................................................................... 6

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*,
    No. 06 Civ. 181 (GBD), 2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007) ........................... 6, 7

*In re Bayou Hedge Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) .................................................................................. 4

*In re Complaint of Kreta Shipping, S.A.*,
    No. 96 CIV. 1137(KMW), 2000 WL 33249253 (S.D.N.Y. June 21, 2000) ...................... 11

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011) .................................................................................. 4

*Jordan v. Madison Leasing Co.*,
    596 F.Supp. 707 (S.D.N.Y. 1984) ..................................................................................... 14

*Knight v. H.E. Yerkes & Assocs., Inc.*,
    675 F. Supp. 139 (S.D.N.Y. 1987) ................................................................................ 6, 12

*Komatsu Equip. Co. v. Ravyn & Robyn Constr., LLC*,
    No. CV172010SJFAYS, 2018 WL 5456671 (E.D.N.Y. July 27, 2018) ........................... 11

*Lippes v. Atlantic Bank*,
    69 A.D.2d 127 (1st Dep't 1979) ........................................................................................ 13

*Mas v. Two Bridges Assocs.*,
    75 N.Y.2d 680 (N.Y. Ct. App. 1990) ................................................................................... 5

*Masterwear Corp. v. Bernard*,
    3 A.D.3d 305 (1st Dep't 2004) .................................................................................... 12, 13

*McDermott v. City of New York*,
    50 N.Y.2d 211 (N.Y. Ct. App. 1980) .............................................................................. 5, 10

*McFall v. Compagnie Mar. Belge S.A.*,
   304 N.Y. 314, 107 N.E.2d 463 (N.Y. Ct. App. 1952) ............................................................... 10

*Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*,
   888 F. Supp. 2d 385 (S.D.N.Y. 2012) ................................................................................... 7

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*,
   782 F.2d 346 (2d Cir. 1986) ............................................................................................ 6, 11

*Pierce v. P&A Admin. Servs., Inc.*,
   No. 09-CV-526A F, 2011 WL 2261116 (W.D.N.Y. June 6, 2011) ............................................ 8

*Raquet v. Braun*,
   90 N.Y.2d 177, 681 N.E.2d 404 (N.Y. Ct. App. 1997) ............................................................ 6

*Rockefeller Univ. v. Tishman Constr. Corp. of N.Y*,
   232 A.D.2d 155 (1st Dep't 1996) ...................................................................................... 9

*Rosado v. Proctor & Schwartz, Inc.*,
   66 N.Y.2d 21 (1985) ................................................................................................... 8, 10

*Ryder Energy Distribution Corporation v. Merrill Lynch Commodities Inc.*,
   748 F.2d 774 (2d Cir.1984) .............................................................................................. 4

*Slattery v. Marra Bros.*,
   186 F.2d 134 (2d Cir. 1951) ............................................................................................ 11

*Sound Refrigeration and Air Conditioning, Inc. v. All City Testing & Balancing Corp.*,
   84 A.D. 3d 1349 (2d Dep't 2011) ..................................................................................... 13

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) ............................................................................................. 7

*Tipaldi v. Riverside Mem'l Chapel*,
   273 A.D. 414, 78 N.Y.S.2d 12 (1st Dep't 1948) ................................................................. 10

*Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*,
   307 A.D.2d 891 (1st Dep't 2003) .................................................................................. 9, 13

*Zapico v. Bucyrus-Erie Co.*,
   579 F.2d 714 (2d Cir. 1978) ......................................................................................... 10, 11

Defendant and Third-Party Plaintiff Andrew Bronstein ("Bronstein"), through his attorneys, Sher Tremonte LLP, respectfully submits this memorandum of law in opposition to the motion to dismiss the Third-Party Complaint filed by Third-Party Defendant Cerberus Business Finance, LLC ("Cerberus").

## PRELIMINARY STATEMENT

Through its motion to dismiss, Cerberus seeks to evade any legal responsibility for its seizure of funds from Sizmek, Inc. ("Sizmek") that, according to plaintiff Getty Images (US) Inc. ("Getty"), included a security deposit of more than $700,000 that belonged to Getty. Cerberus does not claim that it was lawfully entitled to take any Getty money. Despite this apparent $700,000 unjust enrichment of Cerberus, according to its motion to dismiss, New York law does not allow Bronstein to seek indemnification or contribution from Cerberus in connection with tort claims brought by Getty against Bronstein.

As described below, not surprisingly, New York law *does* allow a defendant such as Bronstein to bring third-party claims for indemnification and contribution against persons such as Cerberus. Whether or not such claims will be successful will depend on the facts developed during discovery in this action – both as to the tort claims asserted by Getty against Bronstein and the third-party claims asserted by Bronstein against Cerberus. The Court must deny the attempt by Cerberus to prevent Bronstein from holding Cerberus accountable for its role in Getty's alleged loss of the security deposit.

## FACTUAL BACKGROUND

From March through June 2018, Bronstein served as Chief Financial Officer ("CFO") of Sizmek. Third-Party Complaint ("TPC") ¶ 2. On May 18, 2018, Getty and Sizmek entered into a sublease agreement (the "Sublease"), under which Getty subleased from Sizmek certain office space

1

at 195 Broadway, New York.  *Id.* ¶ 7; *see also* Compl. (ECF No. 1) ¶ 11.  Getty alleges that, upon execution of the Sublease, it deposited with Sizmek a security deposit in the amount of $713,694.00 (the "Security Deposit").  *See* Compl. ¶ 13.

On March 29, 2019, Sizmek filed a voluntary Chapter 11 bankruptcy petition.  TPC ¶ 10.  In the course of its Chapter 11 bankruptcy case, Sizmek rejected the Sublease.  *Id.* ¶¶ 11, 13.  In connection with its objection to the rejection of the Sublease, Getty contends that its legal counsel was told by counsel for Sizmek that Sizmek had "failed to hold Getty's security deposits of $713,694.00 in trust and Getty should not expect to receive it back after rejection of the Sublease."  *Id.* ¶ 12.

Instead of seeking to recover the Security Deposit by filing an adversary proceeding against both Sizmek and Cerberus in the bankruptcy case, in October 2019, Getty filed a two-count complaint against Bronstein, alleging that Bronstein, in his capacity as CFO of Sizmek, is personally liable for Sizmek's conversion of the Security Deposit and that Bronstein acted negligently when he approved and executed the Sublease on behalf of Sizmek.  TPC ¶ 14.  Specifically, in Count One, Getty alleges that Bronstein converted the Security Deposit by causing Sizmek to commingle the Security Deposit with Sizmek's own funds, which funds were, in accordance with a pre-existing First Lien Financing Agreement, subject to Cerberus's control.  Compl. ¶¶ 24-29.  In Count Two, Getty alleges that Bronstein was negligent in failing to "ascertain existing covenants or requirements of law when entering into the Sublease with Getty," which caused Getty's loss of the Security Deposit.  *Id.* ¶¶ 30-34.

By way of a Third-Party Complaint, filed on October 19, 2020, Bronstein seeks indemnification or, in the alternative, contribution from Third-Party Defendant Cerberus as well as

2

Third-Party Defendants Culhane Meadows Haughian & Walsh, PLLC ("Culhane"), Andrew M. Hepburn, Jr. ("Hepburn), and Tim Quillin ("Quillin").

Cerberus provided financing to Sizmek pursuant to the First Lien Financing Agreement, dated September 6, 2017, and served as Agent for the lenders under the First Lien Financing Agreement. TPC ¶ 3; *see also* Compl. ¶ 15. Under the First Lien Financing Agreement, Sizmek's management of cash was subject to certain restrictions and Cerberus was given rights to take control over Sizmek's cash under certain defined circumstances. TPC ¶ 9. On March 25, 2019, Cerberus purported to exercise its rights under the First Lien Financing Agreement, sweeping substantially all of Sizmek's cash funds to accounts controlled by Cerberus, which funds, Getty alleges, included the Security Deposit Sizmek had received from Getty. *Id.* ¶¶ 9, 18.

At the time Cerberus took these actions in March 2019, Cerberus knew or should have known that: (a) Sizmek remained potentially liable to Getty for the return of the Security Deposit; and (b) Sizmek had not segregated the Security Deposit in a separate bank account. *Id.* Cerberus either knew or should have known such information because that information was included in the periodic oral and written reports that Cerberus received from Alvarez & Marsal ("A&M"), a management consulting firm that provided professional services to Cerberus regarding Sizmek's financial condition and business plans. *Id.* ¶ 8. During the period from March to June 2018, A&M analyzed Sizmek's weekly cash inflows and maintained a rolling cash forecast. *Id.* Their reports, delivered to Cerberus, contained information concerning sub-leases entered into by Sizmek, including the Sublease with Getty, and identified Sizmek's liability to sub-tenants arising from security deposits received by Sizmek. *Id.* As a result, if, as alleged by Getty, Cerberus seized funds belonging to Getty when it swept funds from Sizmek's bank accounts in March 2019, then Cerberus

is liable to Bronstein for indemnification and/or contribution concerning Getty's claims against Bronstein.

## ARGUMENT

### I. LEGAL STANDARD

"To survive a motion to dismiss [for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor." *Farmer v. Fzoad.com Enterprises Inc.*, No. 17CIV9300GBDOTW, 2020 WL 5569581, at *3 (S.D.N.Y. Sept. 17, 2020). Accordingly, post-*Twombly*, the standard of review on a motion to dismiss remains "heavily weighted in favor of the plaintiff." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007). "[T]he task of the court in ruling on a motion to dismiss is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distribution Corporation v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 559 (S.D.N.Y. 2011) (Daniels, J.). Thus, "the court should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).

### II. BRONSTEIN HAS STATED A CLAIM FOR COMMON-LAW INDEMNITY

In its motion to dismiss, Cerberus advances two arguments regarding the claim for common-law indemnity (Count I). First, Cerberus contends that the indemnity claim should be

dismissed because Bronstein fails to allege the existence of any duties running from Cerberus to Getty and Sizmek/Bronstein arising out of the Sublease or the Security Deposit. (Cerberus Mot to Dismiss ("Mot.") at 5-7.) Cerberus then argues that, even if Bronstein has alleged a duty, because he "is directly implicated in the alleged wrongdoing," he is not allowed "to assert a cause of action for indemnification under New York law." *Id.* at 8-9. Both arguments are meritless.

Bronstein has adequately stated a claim for "implied-in-law" indemnification. *Gen. Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON Reinsurance Agency, Inc.*, 860 F. Supp. 983, 986 (S.D.N.Y. 1994), *on reconsideration* (Sept. 23, 1994), *aff'd sub nom. Gen. Conference v. AON Reinsurance Agency, Inc.*, 50 F.3d 2 (2d Cir. 1995). "Conceptually, implied indemnification finds its roots in the principles of equity." *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 424 (S.D.N.Y. 2004) (quoting *McDermott v. City of New York*, 50 N.Y.2d 211, 216–17 (N.Y. Ct. App. 1980)). "It is a restitution concept which results in a shifting of the loss 'because to fail to do so would result in the unjust enrichment of one party at the expense of the other.'" *Facilities Dev. Corp. v. Miletta*, 180 A.D.2d 97, 103–04, 584 N.Y.S.2d 491, 495 (3rd Dep't 1992) (quoting *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (N.Y. Ct. App. 1990)). "To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs." *Allianz Ins*, 353 F. Supp. 2d at 424 (quoting *McDermott*, 50 N.Y.2d at 217); *see also First Indem. of Am. Ins. Co. v. Shinas*, No. 03 CIV.6634 KMW KNF, 2009 WL 3154282, at *10 (S.D.N.Y. Sept. 30, 2009) ("New York courts describe common law indemnification as an equitable remedy for unjust enrichment."); *Garrett v. Holiday Inns, Inc.*, 86 A.D.2d 469, 470, 450 N.Y.S.2d 619, 621 (4th Dep't 1982) (the implied indemnity obligation is "based upon the laws' notion of what is fair and proper as between the parties legally liable").

It is long established that "[t]his tort-based indemnification doctrine applies when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors is held liable for a loss primarily the responsibility of the other." *AON Reinsurance Agency*, 860 F. Supp. 983 at 988 (quoting *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986)).

The applicable standards for assessing whether a claim for common law indemnification is stated, as this Court has summarized, are as follows:

> In New York, [a] cause of action for common law indemnification can be sustained only if (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them. The key element is a separate duty-as opposed to the duty owed towards the injured third-party-owed to the indemnitee (Highland – [party seeking indemnity]) by the indemnitor (Debtor).

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*, No. 06 Civ. 181 (GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007), *aff'd sub nom. In re Century/ML Cable Venture*, 311 Fed. Appx. 455 (2d Cir. 2009) (internal quotation marks omitted); *see also Raquet v. Braun*, 90 N.Y.2d 177, 183, 681 N.E.2d 404, 407 (N.Y. Ct. App. 1997) (internal quotations omitted) ("the key element . . . is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor.'"); *Knight v. H.E. Yerkes & Assocs., Inc.*, 675 F. Supp. 139, 143 (S.D.N.Y. 1987) ("Under New York law . . . indemnity may be implied 'to allow one who was compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party.'") (quoting *Hanley v. Fox*, 97 A.D.2d 606, 607 (3d Dept. 1983)).

### A. Bronstein Has Pled the Existence of Duties Owed by Cerberus

Drawing all inferences in Bronstein's favor, the Third-Party Complaint contains sufficient allegations to support a reasonable inference that Cerberus owes a duty to Getty to

6

return the Security Deposit, which "remains at all times [Getty's] property." Compl. ¶ 25. It is irrelevant that Cerberus is not directly in privity with Getty (*see* Mot. at 5), because the duty alleged does not flow from a contractual relationship; rather, it arises out of its "unauthorized assumption and exercise of the right of ownership over [the Security Deposit] belonging to [Getty] to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006). Indeed, even though the primary complaint does not name Cerberus as a defendant, a cause of action for conversion could have been made asserted against Cerberus, since, as pled in the Third-Party Complaint, Cerberus had long known or should have known that the funds it swept from Sizmek's accounts included the Security Deposit. *See, e.g.*, *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (Under New York law, "two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs [sic] rights." Additionally, "[a] plaintiff alleging conversion need not show fault by the defendant.") (internal quotations and quotation marks omitted) (alterations in original). As such, by failing to return the Security Deposit to its rightful owner, Cerberus violated its duty to Getty.

In addition, Bronstein has adequately pled a separate duty to indemnify owed to him by Cerberus, the proposed indemnitor. *See Highland*, 2007 WL 2405689, at *4. Cerberus contends that it did not "owe[] a duty of care to Bronstein" arising out of the sublease or the First Lien Financing Agreement. (Mot. at 6). Cerberus's argument misses the mark.

As noted, the "implied-in-law theory of indemnification, which applies to joint tortfeasors," is tort-based, not contract-based. *AON Reinsurance Agency*, 860 F. Supp. at 990. Getty has sued Bronstein for conversion and negligence, both of which tort-based claims.[1] As detailed in the Third-

---

[1] Indeed, since Bronstein was not a party to the Sublease, Getty could not have brought contract-sounding claims against him.

7

Party Complaint, Bronstein has adequately alleged that Cerberus, among other third-party defendants, was liable for the alleged conversion and at least negligent in causing the loss of the Security Deposit.  Whether or not Cerberus had a contractual duty to inspect the collateral under the First Lien Financing Agreement is irrelevant; Bronstein does not allege that Cerberus obtained actual or constructive knowledge regarding the Security Deposit through actual inspection of Sizmek's bank accounts.  Regardless of whether Cerberus was required by contract to do so, however, as pled, Cerberus, in fact, received oral and written reports prepared by A&M about Sizmek's financial condition and business plans, which contained information concerning the Sublease and Sizmek's weekly cash forecast.  In other words, Bronstein alleges that Cerberus's actual or constructive knowledge about the Security Deposit and Sizmek's potential liability to Getty for the return of the Security Deposit came from its review of the A&M reports.  Tellingly, Cerberus does not contend that the First Lien Financing Agreement disclaimed any duty on the part of Cerberus to review A&M's reports (because it did not).

Indeed, under well-established law, a duty of indemnification is imposed here because, to the extent any recovery is awarded to Getty based on conversion and/or negligence, Cerberus – being the party that knowingly removed from Sizmek's account the funds containing the Security Deposit, to which it had no entitlement in the first instance – "would be unjustly enriched at [Bronstein] expense" if it was not required to indemnify Bronstein. *Garrett*, 86 A.D.2d at 471–72.  Such a result would be "unjust [and] unsatisfactory," which is what indemnity is designed to prevent. *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985); (internal quotations omitted); *see also Pierce v.*

*P&A Admin. Servs., Inc.*, No. 09-CV-526A F, 2011 WL 2261116, at *14 (W.D.N.Y. June 6, 2011) ("Indemnification shifts 'the entire loss to one who more justly deserved it.'").

In sum, Bronstein has adequately pled duties owed by Cerberus and stated a valid claim for common law indemnity.

### B. Bronstein's Defendant Status Does Not Preclude Him from Seeking Indemnification

Cerberus also argues that Bronstein is not allowed to assert a cause of action for indemnification because he is implicated in the alleged wrongdoing. (Mot. at 8-9). This argument is meritless both as a matter of law and as a matter of fact.

#### i. Bronstein Is Entitled to Claim Indemnification as A Matter of Law

According to Cerberus, "New York courts have consistently held that a party who has participated to some degree in the wrongdoing cannot receive the benefit of the doctrine of common law or implied indemnity." (Mot. at 8). Contrary to this argument, New York law on this question is far from "consistent[]" (*Id.*). In its motion, Cerberus cites two First Department cases: *Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*, 307 A.D.2d 891, 897 (1st Dep't 2003); and *Rockefeller Univ. v. Tishman Constr. Corp. of N.Y*, 232 A.D.2d 155 (1st Dep't 1996). These cases stand for the proposition, apparently adopted by the First Department, that the proposed indemnitee must be "without actual fault" *because* "the predicate of common-law indemnity is vicarious liability." *Trump Vill.*, 307 A.D.2d at 895; *Rockefeller Univ*, 232 A.D.2d at 156 ("Indemnification was premised on Tishman's [*i.e.*, the proposed indemnitor] actual fault and not merely its vicarious liability.").

But these First Department decisions are inconsistent with rulings by the New York Court of Appeals and other courts. For example, the New York Court of Appeals has long held that although "implied indemnity is frequently employed in favor of one who is vicariously liable for the tort of

9

another, [] *the principle is not so limited and has been invoked in other contexts as well.*" *Rosado*, 66 N.Y.2d at 24 (emphasis added) (collecting cases); *see also Garrett*, 86 A.D.2d 469 at 470–71 ("Indemnity is common in cases of vicarious liability; but there are other circumstances also, not involving vicarious liability, in which indemnity may be had.") (omitting internal quotations) (collecting cases); *City of New York v. Black & Veatch*, No. 95 CIV. 1299 (LAP), 1997 WL 624985, at *10 (S.D.N.Y. Oct. 6, 1997) ("An indemnification claim is most common in situations involving cases of vicarious liability. However, indemnification actions have been permitted in a variety of situations, including both cases in which the underlying breach of duty is tortious in nature . . .").

Indeed, many New York courts have allowed implied indemnity claims to survive the motion to dismiss outside the context of vicarious liability. *See, e.g.*, *McDermott*, 50 N.Y.2d 211 (decision by the Court of Appeals upholding third-party action by purchaser against manufacturer of defective product); *McFall v. Compagnie Mar. Belge S.A.*, 304 N.Y. 314, 330–31, 107 N.E.2d 463, 472 (N.Y. Ct. App. 1952); *McFall v. Compagnie Mar. Belge [Lloyd Royal], S.A.,* 304 N.Y. 314, 107 N.E.2d 463; *Garrett*, 86 A.D.2d at 471; *Tipaldi v. Riverside Mem'l Chapel*, 273 A.D. 414, 418, 78 N.Y.S.2d 12, 17 (1st Dep't 1948), *aff'd,* 298 N.Y. 686, 82 N.E.2d 585 (N.Y. Ct. App. 1948).

Accordingly, contrary to Cerberus' assertion, Bronstein is not required to demonstrate at the pleading stage that Getty is seeking to hold him liable merely on the basis of vicarious liability, without actual wrongdoing on his part. The Second Circuit has long recognized that "tort indemnity" is based on "a different between the kinds of negligence of the two tortfeasors," where "the person cast in judgment [is entitled to] obtain[] indemnity . . . because of joint breaches of a tort duty to the victim." *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718-19 (2d Cir. 1978). While it may be the case that this concept of indemnity was originally developed "as lenient exceptions to the [now-abrogated] doctrine that there [could] be no contribution between joint tortfeasors," *id.* at 718

(quoting *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2d Cir. 1951), implied-in-law indemnity "aris[es] when there is a great disparity in fault among tortfeasors, and one of those parties has paid damages for which the other was primarily responsible." *City of New York v. Black & Veatch*, No. 95 CIV. 1299 (LAP), 1997 WL 624985, at *10 (S.D.N.Y. Oct. 6, 1997). S*ee also, e.g.*, *Komatsu Equip. Co. v. Ravyn & Robyn Constr., LLC*, No. CV172010SJFAYS, 2018 WL 5456671, at *3 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, No. 17CV2010SJFAYS, 2018 WL 4853052 (E.D.N.Y. Sept. 28, 2018), *aff'd sub nom. Indus. Water Sols., LLC v. Ravyn & Robyn Constr., LLC*, 789 F. App'x 920 (2d Cir. 2020) ("a tort-based right to indemnification [may be] found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other") (citing *Goodpasture*, 782 F.2d at 351); *In re Complaint of Kreta Shipping, S.A.*, No. 96 CIV. 1137(KMW), 2000 WL 33249253, at *3 (S.D.N.Y. June 21, 2000) ("This 'tort indemnity' may apply even when both parties are at fault, so long as the forms of fault 'differ greatly in gravity[.]'") (citing, among others, *Zapico*, 579 F.2d at 718.).[2]

    ii. <u>Bronstein Is Entitled to Claim Indemnification as A Matter of Fact</u>

Based on the faulty description of applicable New York law, Cerberus proceeds to claim that Bronstein is precluded from seeking indemnification due to his "admitted involvement in the alleged wrongdoing." (Mot. 9). As shown in his Amended Answer to the Complaint, however, Bronstein never admits to, and clearly denies any involvement in the alleged wrongdoing. *See,*

---

[2] In *Anderson v. Greyhound Lines, Inc.*, No. 06 CIV. 13371 GBD, 2011 WL 3480945 (S.D.N.Y. Aug. 3, 2011), this Court stated that "New York courts no longer imply indemnification when there is a 'great disparity' in the fault of the tortfeasors." *Id.* at *5 (citing *Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 319, 326 (S.D.N.Y.2010)). As explained above, we disagree with this conclusion. At a minimum, as shown *supra*, courts in this district appear to be split on this question. *See, e.g.*, *Komatsu Equip.*, 2018 WL 5456671, at *3. In any event, the extent of the "disparity" in fault between Cerberus and Bronstein cannot be adjudicated on a motion to dismiss. It is also worth noting that *Anderson* is not binding on this Court in this case and the Court is free to revisit the issue. *See Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

11

*e.g.*, Bronstein Amend. Answer (ECF No. 47) at 1 ("Bronstein generally denies each and every allegation in the Complaint, including any and all allegations that he has engaged in any wrongful conduct, and he denies that he has any liability in this matter."); *id.* ¶¶ 1, 4, 27, 29, 31, 34 (denies all of the allegations in these paragraphs).

Thus, based on allegation in the Third-Party Complaint, there is an entirely plausible "set of facts on which it can be true that [Bronstein] was not at least partially responsible for" the alleged harm suffered by Getty. *Knight*, 675 F. Supp. at 143. But even if *some* actual wrongdoing were found on the part of Bronstein, Bronstein has sufficiently pled that Cerberus is also responsible for the misconduct by knowingly and actively removing and retaining funds that belonged to Getty. As explained above, under New York law, Bronstein has every right to seek indemnification from Cerberus, a joint tortfeasor.

## III. BRONSTEIN HAS STATED A CLAIM FOR CONTRIBUTION

In support of its motion to dismiss Bronstein's third-party claim for contribution, Cerberus argues that Getty's injury does not constitute an "injury to property" within the meaning of CPLR § 1401 because the damages sought are "purely economic in nature" and, therefore, cannot provide a legal basis for a claim for contribution under New York law. (Mot. at 7-8.)

Contrary to this argument, "it is settled that any tortious act (other than personal injury), including conversion, resulting in damages constitutes an 'injury to property' within the meaning of CPLR 1401." *Masterwear Corp. v. Bernard*, 3 A.D.3d 305, 307 (1st Dep't 2004) (vacating denial of defendant's motion to amend complaint). In *Masterwear*, the defendant was sued for conversion and sought to bring a contribution claim based on the same. The lower court denied his motion to amend complaint on the ground that contribution claims were "available only for

12

claims of personal injury, injury to property or wrongful death." *Id*. The First Department, on appeal, overturned the holding on the ground that the underlying action against the defendant included conversion, a tort. *Id*.; *see also Lippes v. Atlantic Bank*, 69 A.D.2d 127, 139-141 (1st Dep't 1979) (denying motion to dismiss contributory negligence claim where the underlying claims include conversion) ("A conversion has been held to be an injury to property . . . within the contemplation of CPLR Sects. 1401 and 1411"). Because contribution claims may be brought where the underlying claims are tort causes of action, and both of Getty's underlying claims against Bronstein are tort claims (conversion and negligence), Bronstein may bring a contribution claim against Cerberus. *See Sound Refrigeration and Air Conditioning, Inc. v. All City Testing & Balancing Corp.*, 84 A.D. 3d 1349, 1350 (2d Dep't 2011) (reversing dismissal of third-party claim for contribution because negligence claim asserted against third-party plaintiff).

Indeed, two of the cases cited by Cerberus are inapposite because the courts dismissed contribution claims on the ground that the underlying claims were not predicated on tort liability. *See Trump Vil.*, 307 A.D.2d 891 ("More fundamental, however, is codefendants' failure to plead any predicate tort liability upon which their contribution claims may be based."); *Board of Educ. of Hudson City School Dist. v. Sargent*, 71 N.Y.2d 21 (N.Y. Ct. App. 1987)) ("We find nothing in the legislative history or the common-law evolution of the statute on which to base a conclusion that CPLR 1401 was intended to apply in respect to a pure breach of contract action such as would permit contribution between two contracting parties whose only potential liability to the plaintiff is for the contractual benefit of the bargain."). Although one of the underlying claims in *Children's Corner Learning Ctr. v. A. Miranda Contr. Corp.*, 64 A.D.3d 318, 324 (1st Dep't 2009) was a malpractice claim, at least one court has distinguished this case after noting that the underlying claims were mostly breach of contract claims, and "plaintiff sought the same

13

damages for the professional malpractice as for the breach of contract claims." *22 Gramercy Park LLC v. Michael Haverland Architect*, 68 Misc.3d 1201(a), at *3 (Sup. Ct. N.Y. County 2020) (denying motion to dismiss contribution claim where the underlying claim was negligence).  Here, in contrast, none of the underlying claims involve breach of contract.  Thus, none of Cerberus's cases are applicable to this case.

Moreover, the fact that the damages sought happen to be the value of the lost deposit does not render the damages "purely economic in nature."  (*See* Mot. at 7).  Courts have found similar loss of financial funds or assets to constitute "injury" within the meaning of CPLR § 1401.  For example, in *Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 491-92 (S.D.N.Y. 1993), the plaintiff lost his settlement fund after the bank holding the fund engaged in improper accounting.  The plaintiff sued his attorney, who in turn brought a contribution claim against his accountant based on an underlying tort claim.  The court found the bank's loss of the settlement fund to constitute "injury" and denied motion to dismiss contribution.  *Id.* at 493.  Similarly, in *Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 709-10 (S.D.N.Y. 1984), a defendant accused of gross negligence for selling overinflated tax shelters was allowed to bring a contribution claim against his accountant based on gross negligence.  Getty's alleged loss of its Security Deposit falls well within the definition of injury to property under CPLR § 1401.

## **CONCLUSION**

Based on the above-stated reasons, Bronstein respectfully requests that the Court deny Cerberus' motion to dismiss in its entirety.

SHER TREMONTE LLP

By: ___/s/ Heather Y. Han___
    Robert Knuts
    Heather Y. Han
    Jennifer X. Luo

90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
hhan@shertremonte.com

*Attorneys for Defendant and Third-Party Plaintiff Andrew Bronstein*