UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
GETTY IMAGES (US), INC.,

          Plaintiff,

          - against -

ANDREW BRONSTEIN, AND MARK GRETHER

          Defendants.
------------------------------------------------------------ X
ANDREW BRONSTEIN

          Third-Party Plaintiff,

          - against -

CERBERUS BUSINESS FINANCE, LLC,
CULHANE MEADOWS HAUGHIAN &
WALSH, PLLC, ANDREW M. HEPBURN,
JR., AND TIM QUILLIN,

          Third-Party Defendants
------------------------------------------------------------ X

**Oral Argument Requested**

Case No. 1:19-cv-09804 (GBD)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT CERBERUS BUSINESS FINANCE, LLC'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

SCHULTE ROTH & ZABEL LLP

Andrew D. Gladstein
William H. Gussman, Jr.
Michael Periatt
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Third-Party Defendant Cerberus Business Finance, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

    ARGUMENT .................................................................................................................... 2

I.    BRONSTEIN FAILS TO ARTICULATE THE EXISTENCE OF A
    COGNIZABLE DUTY OWED BY CERBERUS ..................................................... 2

        A.    The Third-Party Complaint Does Not Allege A Duty Owed By
              Cerberus To Getty ....................................................................................... 3

        B.    The Third-Party Complaint Does Not Allege A Duty Owed By
              Cerberus To Bronstein ................................................................................. 5

II.    ALLEGED WRONGDOERS ARE NOT ENTITLED TO
     INDEMNIFICATION UNDER SETTLED NEW YORK LAW ............................. 6

III.   CONTRIBUTION IS UNAVAILABLE WHERE THE DAMAGES
      SOUGHT ARE PURELY ECONOMIC IN NATURE ............................................ 8

CONCLUSION ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page(s)**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
 947 F. Supp. 2d 222 (E.D.N.Y. 2013) ............................................................................... 2, 6

*Amusement Indus., Inc. v. Stern*,
 693 F. Supp. 2d 319 (S.D.N.Y. 2010) ................................................................................. 7, 8

*Anderson v. Greyhound Lines, Inc.*,
 No. 06 Civ. 13371 (GBD),
 2011 WL 3480945 (S.D.N.Y. Aug. 3, 2011) ............................................................................ 7

*Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*,
 71 N.Y.2d 21 (1987) ................................................................................................................ 9

*Child.'s Corner Learning Ctr. v. A. Miranda Contracting Corp.*,
 64 A.D.3d 318 (1st Dep't 2009) ............................................................................................... 9

*City of New York v. Black & Veatch*,
 No. 95 Civ. 1299 (LAP),
 1997 WL 624985 (S.D.N.Y. Oct. 6, 1997) .............................................................................. 8

*Colavito v. N.Y. Organ Donor Network, Inc.*,
 8 N.Y.3d 43 (2006) .................................................................................................................. 4

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
 52 F. Supp. 3d 625 (S.D.N.Y. 2014) ........................................................................................ 4

*Garrett v. Holiday Inns*,
 86 A.D.2d 469 (4th Dep't 1982),
 *order modified by*,
 58 N.Y.2d 253 (1983) ........................................................................................................... 6, 8

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture,*
 No. 06 Civ. 181 (GBD),
 2007 WL 2405689 (S.D.N.Y. 2007),
 *aff'd*, 311 F. App'x 455 (2d Cir. 2009) ..................................................................................... 5

*Johnson City Cent. Sch. Dist. v. Fid. & Deposit Co. of Md.*,
 272 A.D.2d 818 (3d Dep't 2000) .............................................................................................. 7

*McDermott v. City of New York,*
 50 N.Y.2d 211 (1980) .............................................................................................................. 8

*Monaghan v. SZS 33 Assocs., L.P.*,
   73 F.3d 1276 (2d Cir. 1996) ........................................................................................................ 7

*In re R.J. Dooley Realty, Inc.*,
   No. 09-36777,
   2010 WL 2076959 (Bankr. S.D.N.Y. May 21, 2010) .................................................................. 4

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) ........................................................................................................ 3

*Trump Vill. Section 3, Inc. v. N.Y.S. Hous. Fin. Agency*,
   307 A.D.2d 891 (1st Dep't 2003) ............................................................................................. 7, 9

*Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*,
   109 A.D.2d 449 (1st Dep't 1985) ............................................................................................. 7, 8

*U.S. Bank, Nat'l Ass'n v. Commonwealth Land Title Ins. Co.*,
   No. 13 Civ. 7626 (NRB),
   2015 WL 1291151 (S.D.N.Y. Mar. 23, 2015) ............................................................................. 9

**Statutes**

N.Y. C.P.L.R. 1401 ............................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................... 1

Third-Party Defendant Cerberus Business Finance, LLC ("Cerberus"), by and through its attorneys, Schulte Roth & Zabel, LLP, submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Third-Party Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Our Opening Brief[1] demonstrated that Bronstein fails to plead the existence of a duty owed by Cerberus arising out of a sublease that it was not a party to; that Bronstein is an alleged wrongdoer; and that the nature of the damages sought in the primary actions are purely economic. As a result, Bronstein's claims against third-party defendant Cerberus for indemnification and contribution fail.

Bronstein's response is remarkable. Even though he, as Sizmek's Chief Financial Officer, is alleged to have failed to segregate Getty's Sublease, and even though Cerberus is not alleged to have had any involvement in the execution or accounting of the Sublease to which it was not a party, Bronstein asserts that the entire loss from the Sublease should be borne by *Cerberus*—Sizmek's secured lender. He makes this brazen claim on the basis that Cerberus received sporadic reports from its third party advisor that might have shed light on Bronstein's own failure to segregate the Security Deposit.

Bronstein finds no support in the facts or the law. He cites not a single case supporting the proposition that a senior secured lender owes duties to subordinated unsecured creditors (it

---

[1] The Memorandum of Law in Support of Third-Party Defendant Cerberus Business Finance, LLC's Motion to Dismiss the Third-Party Complaint is referred to herein as the "Opening Brief" or the "Cerb. Br." Third-Party Plaintiff Andrew Bronstein's Memorandum of Law in Opposition to Cerberus Business Finance, LLC's Motion to Dismiss the Third-Party Complaint is referred to herein as the "Opposition" or "Opp'n Br." The Third-Party Complaint is sometimes referred to herein as "TPC."

1

does not), or that a lender's diligence of collateral used to secure a loan somehow creates duties between the lender and those who hold a stake in that collateral (it does not). He confronts dispositive case law, including a decision by this Court, that precludes alleged wrongdoers from seeking indemnification, by simply disagreeing with the outcomes of those cases, and by attempting to create murk in an area of the law that is crystal clear. And he ignores the reality that the damages sought in the action brought by Getty are purely monetary, precluding his contribution claim.

The Third-Party Complaint against Cerberus should be dismissed with prejudice.

## ARGUMENT

### I. BRONSTEIN FAILS TO ARTICULATE THE EXISTENCE OF A COGNIZABLE DUTY OWED BY CERBERUS

Bronstein has alleged no facts to plausibly suggest that Cerberus owed a duty of care arising out of the sublease between Sizmek and Getty. As explained in our Opening Brief, the only agreement to which Cerberus *was* a party—the First Lien Financing Agreement—was not only unrelated to the sublease, it explicitly disclaimed any duty owed by Cerberus to anyone. Cerb. Br. 3. Moreover, under governing New York law, a financial institution (like Cerberus) owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *See Abraham v. Am. Home Mortg. Servicing, Inc.,* 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) ("It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties."). Put simply, Cerberus owed no duties relating to the Sublease, expressed or implied.

In his Opposition, Bronstein does not dispute that Cerberus had no involvement in the negotiation or execution of the sublease between Getty and Sizmek, and no involvement in how

the Sublease was held or accounted for by Sizmek. Nonetheless, Bronstein claims that Cerberus owed an "implied" duty to both Getty and Bronstein because Cerberus received reports that might have shed light on the fact that Bronstein had comingled Getty's security deposit in Sizmek's accounts. Opp'n Br. 8. Bronstein's claims of a duty owed by Cerberus are meritless.

A.  The Third-Party Complaint Does Not Allege A Duty Owed By Cerberus To Getty

As we pointed out in our Opening Brief, the Third-Party Complaint does not allege that Cerberus was in privity with Getty, or had any other involvement with Getty. As a result, Cerberus owed no duties to Getty, express or implied. Bronstein responds by identifying the duty Cerberus purportedly owed to Getty as a duty to "return the Security Deposit," which Bronstein claims to arise out of Cerberus' "unauthorized assumption and exercise of the right of ownership over [the Security Deposit] belonging to [Getty]…." Opp'n Br. 6-7 (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006)).

Bronstein's reliance on *Thyroff* to suggest that Cerberus owes a "duty to return the Security Deposit" is entirely misplaced. *Thyroff* involved a run-of-the-mill conversion claim between an insurance company and its agent. It did not involve claims for indemnification or contribution. As a result, the existence of a "duty owed" was not at issue, and the word "duty" is not even mentioned in the *Thyroff* opinion. Nonetheless, *Thyroff* is the only case relied upon by Bronstein to support the proposition that Cerberus owed a duty to Getty. That makes no sense.

Bronstein also argues, even though Getty brought no such claim against Cerberus in Sizmek's bankruptcy proceeding, that "a cause of action for conversion could have been made asserted [sic] against Cerberus, since, as pled in the Third-Party Complaint, Cerberus had long known or should have known that the funds it swept from Sizmek's accounts included the Security Deposit." Opp'n Br. 7. But Bronstein cannot substitute a missing element of his indemnification and contribution claims (a duty owed) with an entirely separate cause of action

3

(conversion). Whether Getty could have maintained a cause of action against Cerberus for conversion does nothing to cure Bronstein's failure to plead the existence of a duty owed.

And, in any event, Bronstein is wrong. As the Court of Appeals has made clear, "[a] conversion takes place when someone, intentionally and *without authority*, assumes or exercises control over personal property belonging to someone else…." *Colavito v. N. Y. Organ Donor Network, Inc*., 8 N.Y.3d 43, 49–50 (2006). Here, Cerberus' alleged conduct was not "without authority." Cerberus was a *senior secured lender.* Bronstein concedes that as a senior secured lender, Cerberus had legal authority to sweep Sizmek's accounts. TPC ¶ 9 (recognizing Cebrerus' contractual right to sweep Sizmek's account); *see also First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd*., 52 F. Supp. 3d 625, 639 (S.D.N.Y. 2014) (applying rule that plaintiff must have "legal ownership or an immediate *superior* right of possession to a specific identifiable thing" to bring conversion claim against defendant secured lender) (emphasis added).

Moreover, Bronstein offers no explanation for why a party could be liable for converting assets of another party where its rights are superior to that party. In Sizmek's bankruptcy, Getty would have an unsecured breach of contract claim. As a senior secured lender, Cerberus would have priority over Getty's unsecured contract claim. *See In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *3 (Bankr. S.D.N.Y. May 21, 2010) (holding that "the claims of secured creditors are satisfied first, then administrative claims such as the claim of a chapter 11 trustee, then priority unsecured claims such as certain taxes, then general unsecured claims such as damages for breach of a contract.").

Finally, the Third-Party Complaint does not even allege that Getty's security deposit was lost as a result of Cerberus, further undermining Bronstein's claim that Cerberus has a duty to return it. The Third-Party Complaint alleges that following Sizmek's voluntary Chapter 11

4

bankruptcy petition, it "reached an agreement with Cerberus for Sizmek's consensual use of cash collateral," leading to Sizmek's confirmation on March 29, 2019 that it had "approximately $3.9 million in cash"—more than enough to satisfy its obligations to Getty.  TPC ¶ 10.  It was not until Sizmek's landlord at 195 Broadway drew down completely a $2.3 million letter of credit that Sizmek provided notice that it was "rejecting the prime lease."  *Id.*

### B. The Third-Party Complaint Does Not Allege A Duty Owed By Cerberus To Bronstein

Nor does Bronstein allege a duty owed to him.  Bronstein claims that he has alleged a "separate duty to indemnify owed to him by Cerberus" because Cerberus was "at least negligent in causing the loss of the Security Deposit."  Opp'n Br. 8.  The basis for that allegation is that Cerberus "received oral and written reports prepared by A&M about Sizmek's financial condition and business plans, which contained information concerning the Sublease and Sizmek's weekly cash forecast."  *Id*.

Tellingly, the only case cited by Bronstein in support of his argument that he has "pled a separate duty" is this Court's decision in *Highland,* which cuts *against* Bronstein.  This Court held in *Highland* that the third-party plaintiff had failed to plead the existence of an independent duty and dismissed the indemnification and contribution claims on that basis.  *See Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*, No. 06 Civ. 181 (GBD), 2007 WL 2405689, at *4 (S.D.N.Y. 2007) ("Highland fails to allege that Debtor owed it any independent duty separate and apart from Debtor's contractual obligations under the ReCap Agreement."), *aff'd,* 311 F. App'x 455 (2d Cir. 2009)  That is exactly the case here.

Nor does Bronstein offer any authority supporting his contention that the reports Cerberus purportedly received from its own third-party advisor created a duty flowing from

Cerberus to anyone.[2]  Indeed, the notion that Cerberus owed any duties beyond the First Lien Financing Agreement is belied by settled New York law, which we pointed out in our Opening Brief, pursuant to which a "lender does not owe a borrower any special duties." *Abraham v. Am. Home Mortg. Servicing, Inc.,* 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013).  Bronstein glaringly ignores the *Abraham* holding in his Opposition.  Instead, all he can say is that Cerberus "would be unjustly enriched at [Bronstein]'s expense" if it was not required to indemnify Bronstein.  Opp'n Br. 8 (citing *Garrett v. Holiday Inns*, 86 A.D.2d 469, 471-72 (4th Dep't 1982), *order modified by,* 58 N.Y.2d 253 (1983)).  Given Bronstein's reliance on authority throughout the rest of his brief that only undermines his arguments, it is no surprise that *Garrett* is no different.  The court in *Garrett dismissed* the third-party plaintiff's contribution and indemnification claims, and the lone quote offered in the Opposition about unjust enrichment is divorced from the court's discussion of the requisite duty owed.  In fact, the *Garrett* court held that a "third-party action for contribution or indemnity does not lie against one who has not violated a duty owed to plaintiff in the primary action." *Garrett,* 86 A.D.3d at 470.

Cerberus did not owe duties to Getty or Bronstein.  Absent a duty owed, there is no claim for indemnification or contribution.  The claims against Cerberus should be dismissed on this basis alone.

## II.   ALLEGED WRONGDOERS ARE NOT ENTITLED TO INDEMNIFICATION UNDER SETTLED NEW YORK LAW

Our Opening Brief demonstrated that New York law does not permit a defendant like

---

[2] The logic of Bronstein's theory reveals the absurdity of his argument.  According to Bronstein, a presentation made by a third-party advisor to a lender about the assets used to secure a loan would create a duty between the lender and potentially any party that has an interest in those assets.  That is not supported by New York law, which requires a "special relationship" between parties in order for an implied duty of care to exist.

6

Bronstein, who is directly implicated in the alleged wrongdoing, to assert a cause of action for indemnification. "Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer." *Trump Vill. Section 3, Inc. v. N.Y.S. Hous. Fin. Agency*, 307 A.D.2d 891, 895 (1st Dep't 2003) (quoting *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 451 (1st Dep't 1985)).

At one point, New York permitted indemnification claims where there was *some* fault on the part of the proposed indemnitee. That is no longer the case. "New York courts no longer imply indemnification when there is a 'great disparity' in the fault of the tortfeasors." *Anderson v. Greyhound Lines, Inc.,* No. 06 Civ. 13371 (GBD), 2011 WL 3480945, at *5 (S.D.N.Y. Aug. 3, 2011) (citing *Amusement Indus., Inc. v. Stern,* 693 F. Supp. 2d 319 (S.D.N.Y. 2010)). The court in *Amusement* summarized the issue succinctly:

> [I]ndemnity is no longer available under New York law where the proposed indemnitee bears fault for the injury for which it seeks indemnity. Where a party seeking to recover against other tortfeasors is at fault, New York instead relegates such a party to the remedy of contribution. *See Johnson City Cent. School Dist. v. Fidelity & Deposit Co. of Md.,* 272 A.D.2d 818, 822, 709 N.Y.S.2d 225 (3d Dep't 2000) ("where [joint] tortfeasors share in responsibility for the same injury...apportionment through contribution, rather than a shifting of the entire loss through implied indemnification, is generally the appropriate remedy"). And, indeed, the Second Circuit has itself recognized that "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff," *Monaghan,* 73 F.3d at 1284–85 (citing cases)-although *Monaghan* did not refer to the *Yemen* case in so holding.

693 F. Supp. 2d at 326–27.

Bronstein simply "disagree[s]" with the mountain of case law that undermines his indemnification claim. He argues that all of these decisions got it wrong because "there are other

7

circumstances, also, not involving vicarious liability, in which indemnity may be had." Opp'n Br. 10 (quoting *Garrett*, 86 A.D.2d at 470-71). Bronstein's effort to distinguish between vicarious liability claims and claims "outside the context of vicarious liability" is neither here nor there. The point is that a third-party plaintiff seeking indemnification must adequately allege that it would be appropriate to shift the entire loss to another. None of the cases cited by Bronstein are to the contrary. *See, e.g., Garrett*, 86 A.D.2d at 470 ("In indemnity, a party held legally liable to plaintiff shifts the entire loss to another")*; City of New York v. Black & Veatch,* No. 95 Civ. 1299 (LAP), 1997 WL 624985, at *5 (S.D.N.Y. Oct. 6, 1997) ("[i]n indemnification, which arises out of an express or implied contract, the party held legally liable shifts the entire loss to another)*; McDermott v. City of New York,* 50 N.Y.2d 211, 220 (1980) ("the indemnitor is either totally responsible or not").

Here, Bronstein offers no plausible argument—because there is none—for why a party that had no involvement with Getty's security deposit could be "totally responsible" for Bronstein's failure to segregate it from certain accounts. Accordingly, since "liability against [Bronstein] would be based upon [his] own participation in the acts giving rise to the loss, that is, as an actual wrongdoer, [Bronstein is] precluded from recovery…on the basis of common-law indemnity." *Trs. of Columbia Univ*., 109 A.D.2d at 453-54.

### III. CONTRIBUTION IS UNAVAILABLE WHERE THE DAMAGES SOUGHT ARE PURELY ECONOMIC IN NATURE

Our Opening Brief demonstrated that even if Bronstein had alleged a cognizable duty, it would still not save his contribution claim, because "purely economic loss resulting from a breach of contract does not constitute 'injury to property.'" *Child.'s Corner Learning Ctr. v. A.*

*Miranda Contracting Corp.*, 64 A.D.3d 318, 323–24 (1st Dep't 2009) (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 26 (1987).

Getty argues that because New York courts have recognized that a tortious act "resulting in damage constitutes an 'injury to property' within the meaning of CPLR 1401," it may maintain a contribution claim against Cerberus. Not so. "[T]he touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Child.'s Corner Learning Ctr.*, 64 A.D.3d at 324 (collecting cases). "Where a plaintiff's direct claims against a codefendant seek only a contractual benefit of the bargain recover, [even] tort language notwithstanding, contribution is unavailable." *U.S. Bank, Nat'l Ass'n v. Commonwealth Land Title Ins. Co.,* No. 13 Civ. 7626 (NRB), 2015 WL 1291151, at *2 n.1 (S.D.N.Y. Mar. 23, 2015) (quoting *Trump Vill. Section 3*, *Inc.*, 307 A.D.2d at 891).

Here, there is no dispute that the claims asserted in the primary action are tort claims. What Bronstein ignores, and what distinguishes this case from those on which Bronstein relies in the Opposition, is the reason that tort claims were asserted in the primary action: Sizmek's bankruptcy. The "measure of damages" sought in the complaint are precisely those that Getty has lost an account of Bronstein and Sizmek's breach of their obligations pursuant to the Sublease. If Sizmek was not in bankruptcy, this would be a straightforward breach of contract action, seeking straightforward breach of contract damages. That is the "nature" of the damages sought by Getty, and the reason why a claim for contribution against Cerberus would be invalid.

9

## **CONCLUSION**

The claims asserted in the Third-Party Complaint against Cerberus should be dismissed with prejudice.

DATED:   New York, New York
         JaNUARY 20, 2020

SCHULTE ROTH & ZABEL LLP

By: /s/ Andrew D. Gladstein
    Andrew D. Gladstein
    William H. Gussman, Jr.
    Michael Periatt

919 Third Avenue
New York, New York  10022
(212) 849-7000
(212) 849-7100

*Attorneys for Third-Party Defendant Cerberus Business Finance, LLC*

10